**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 07-23381-CIV-GOLD/GOODMAN

STEPHEN L. WHITE,

    Plaintiff,

v.

DET. DE LA OSA,

    Defendant.

_____

**ORDER DENYING PLAINTIFF'S MOTION FOR RELIEF FROM ORDER**

This cause is before me on Plaintiff's Motion for Relief From Order. [ECF No. 151]. Defendant filed a response opposing the motion, but Plaintiff did not file a reply and the time for doing so has now expired.[1] [ECF No. 156]. For the reasons below, Plaintiff's motion is **DENIED**.

**I.  INTRODUCTION**

This is an action for false arrest and malicious prosecution brought pursuant to 42 U.S.C. § 1983 by Plaintiff against Defendant, a Miami-Dade County Police Department detective. [ECF No. 91]. The case has a long procedural history and the scheduling order has been modified at various points in ways that are not necessarily all relevant to this order. But what is relevant for present purposes is that the Court's Supplemental Scheduling Order provided that "All motions to join additional parties or amend the pleadings shall be filed by **September 14, 2011**." [ECF No. 94 (emphasis in original)]. This deadline was set after the Court previously provided Plaintiff the opportunity to file (and he did file) a third amended complaint. [*See* ECF

---

[1]  Plaintiff did, however, file a functionally equivalent document which he labeled a motion to strike Defendant's response. [ECF No. 165]. As indicated in my order denying that motion, the Undersigned treated the motion to strike as if it were a reply in support of Plaintiff's Motion for Relief From Order.

Nos. 89; 90; 91].[2] Moreover, Plaintiff was allowed to file his third amended complaint despite the fact that the very first amendment deadline set in this case expired more than two years earlier and the case was filed nearly three years earlier. [*See* ECF Nos. 1; 32].

The September 14, 2011 supplemental pleading amendment deadline was established in an order dated March 25, 2011. But Plaintiff waited until after that deadline already passed, until September 29, 2011, to file his Request to Amend Defendants. [ECF No. 134].[3] In this request, Plaintiff sought leave to amend his complaint to include causes of action against a new defendant, Sgt. B. Boyd, for false arrest and malicious prosecution.[4] Defendant opposed the request on the grounds the request was untimely (and Plaintiff did not show good cause to excuse the untimeliness), that granting the motion would unduly prejudice Defendant and that amendment would be futile because the allegations do not state a cognizable claim for relief. [ECF No. 156].

The Court denied Plaintiff's request to amend on November 1, 2011 and stated the following:

> In his request, Plaintiff does not explain his late filing or otherwise suggest any reason why he could not have made his request earlier through the exercise of due diligence. Given the nature of

---

[2] In the report and recommendations recommending that the District Court allow Plaintiff to file a third amended complaint, which the District Court adopted fully, the Undersigned explicitly cautioned Plaintiff that "[t]he third amended complaint must include all allegations <u>against every defendant</u> and must state all relief which is sought." [ECF No. 89, p. 4 (emphasis added)].

[3] The request indicates that Plaintiff, a *pro se* incarcerated individual, placed this filing in the prison mail on this date. The request is therefore considered as having been filed on September 29, 2011. *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) ("Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing"). The docket entry date of October 3, 2011 is merely the date the Clerk of Court received and uploaded the filing onto the CM/ECF system.

[4] Plaintiff purports to list a third cause of action for "Fourth Amendment," but this appears to be substantively identical to the new false arrest claim.

2

> Plaintiff's new allegations, and the fact Plaintiff previously filed three other complaints in this case, the Court notes that such justification is not obvious. The defendant who Plaintiff seeks to add, Boyd, was allegedly De La Osa's supervisor and all of Plaintiff's allegations regarding Boyd stem from the same incident and appear to have occurred during the same time period. It is unclear why, nearly four years after he filed his initial complaint, Plaintiff was for the first time able to learn the details of Boyd's alleged wrongdoing. Therefore, Plaintiff's request to amend is DENIED for failure to show good cause.

[Order Denying Plaintiff's Request to Amend and Granting Defendant's Unopposed Motion to Extend Discovery By 120 Days, ECF No. 145, pp. 2-3]. The Court also denied the request because it agreed "that it would constitute an undue burden to require Defendant to engage in new discovery to address a new defendant involving a new theory of the case." On November 21, 2011, Plaintiff filed his Motion for Relief From Order (i.e., the November 1, 2011 order denying his request to amend). This motion is essentially a motion for reconsideration of the November 1, 2011 order denying his request to amend.

In the motion, Plaintiff contends that he waited until September 29, 2011 to seek leave to amend to include claims against Boyd because it was not until September 16, 2011 that Plaintiff first received evidence establishing that Boyd was liable for false arrest and malicious prosecution. Plaintiff states that on that date he received a group of documents from his former criminal defense attorney. Plaintiff specifically flags two documents – a police report and a DNA test consent form – as providing the grounds for claims against Boyd. [ECF No. 151, p. 3]. Plaintiff also argues that Defendant overstated the prejudice he would face from the amendment since Defendant was actually served on January 25, 2010, and therefore Defendant has not been

3

defending this case for four years, as suggested in Defendant's response to the request to amend.[5]

Defendant opposes the motion on several grounds, including that (1) Plaintiff did not present grounds entitling him to reconsideration, (2) Plaintiff did not allege proper grounds for an untimely pleading amendment, (3) amendment would unduly prejudice Defendant, and (4) amendment would be futile.

## II.     LEGAL STANDARDS

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992); *Reyher v. The Equitable Life Assurance Soc'y of the U.S.*, 900 F. Supp. 428, 430-31 (M.D. Fla. 1995) (accord) (denying motion for reconsideration of order denying motion to amend because movant failed to assert a proper ground). "A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made:" *Z.K. Marine*, 808 F. Supp. at 1563.

> [It is an improper use of] the motion to reconsider to ask the Court to rethink what the Court . . . already thought through-rightly or wrongly. . . . The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

---

[5]     Plaintiff also claims that he never received the supplemental scheduling order and therefore he was previously unaware of the supplemental amendment deadline.  If this claim is true, then it is irrelevant.  This is because Plaintiff contends that he did not learn the information on which his proposed amendment is based until after the supplemental amendment deadline already passed.

4

*Id.* (brackets in original) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). A motion for reconsideration should be denied where the movant relies on new legal theories or previously undisclosed facts or evidence. *Mays v. U.S.P.S.*, 122 F.3d 43, 46 (11th Cir. 1997).

Federal Rule of Civil Procedure 16(b)(1) requires a district court to enter a scheduling order that limits the time to amend pleadings. The scheduling order may only be amended for good cause and with the judge's consent. FED. R. CIV. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint, Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting 1983 Advisory Comm. Notes, subdivision (b)); *see also Equity Lifestyle Props., Inc. v. Florida Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009) ("In deciding whether to grant a party leave to amend a pleading, a district court may consider several factors, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment'") (quoting *Foman v. Davis*, 371 U.S. 178, 182(1962)).

Therefore, in order to prevail on his Motion for Relief From Order, Plaintiff must demonstrate that he is entitled to reconsideration under the first standard *and* that his request for leave to amend is appropriate under the second. *Cf. Reyher*, 900 F. Supp. at 430.

III.   **ANALYSIS**

The thrust of Plaintiff's argument is that he did not file a motion for leave to amend until after the supplemental amendment deadline because he did not receive the documents from his criminal defense counsel that alerted him to the existence of the claims against Boyd until after

the supplemental deadline already expired. After considering this explanation in light of the applicable legal standards, the Court concludes that Plaintiff's Motion for Relief From Court Order must be denied for three reasons.

First, Plaintiff did not present any intervening change in the law or the facts and has not explained how the Court committed an error of reasoning in its November 1, 2011 Order Denying Plaintiff's Request to Amend and Granting Defendant's Unopposed Motion to Extend Discovery By 120 Days. Plaintiff's motion can instead be characterized merely as attempting to raise new arguments premised on facts that were known to him at the time he filed his original request for leave to amend. Therefore, he is not entitled to reconsideration.

Second, even if he were entitled to reconsideration, which he is not, Plaintiff did not demonstrate that he exercised diligence in obtaining the new information. Even if it is true that Plaintiff did not receive the documents until September 16, 2011, then Plaintiff would still have to demonstrate that he was diligent in seeking these documents from his former counsel. Plaintiff filed his lawsuit nearly four years ago. But Plaintiff does not describe when he requested these documents. This omission is fatal to any argument that he diligently pursued the documents and information contained therein.

Had Plaintiff showed that he requested these documents several years ago and his criminal defense counsel only recently decided to respond to his request (a scenario the Court is not facing here), then, all else equal, Plaintiff may have been able to demonstrate diligence. But, for example, if Plaintiff requested these documents within the last year (i.e., approximately three years after filing suit), then his actions could hardly be characterized as "diligent." The Court also notes that Plaintiff failed to explain why these documents were the only source of the information leading him to believe Boyd was liable for false arrest and malicious prosecution

and does not detail any other reasonable investigative steps he took which did not reveal this information previously.

Third, even if he were diligent in seeking these documents (which he did not demonstrate), the Court finds that the amendment would be futile because the proposed amendment fails to state a cognizable claim against Boyd based on either an official capacity or individual capacity theory.

A claim against a government official in his official capacity is merely another way of pleading a claim directly against the governmental entity that employs the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). "A county's liability under § 1983 may not be based on the doctrine of respondeat superior." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "Rather, a county can be liable only when the execution of a county policy or custom causes a constitutional violation." *Presnell v. Paulding Cnty, Ga.*, Nos. 10–15832, 11–10316, 2011 WL 6156885, at *4 (11th Cir. Dec. 13, 2011) (affirming grant of judgment on the pleadings to the county because the complaint was "utterly devoid of any allegations indicating that a custom or policy of Defendant Paulding County caused Plaintiff's alleged injuries"); *see also Moore v. Miami-Dade Cnty.*, 502 F. Supp. 2d 1224, 1230 n.4 (S.D. Fla. 2007) ("The final policy making authority for Miami-Dade County rests solely with the Board of County Commissioners or the County Manager" and not with a county police officer and port security guard).

Plaintiff does not allege that Boyd acted pursuant to any Miami-Dade County policy or custom. Consequently, he failed to allege a claim for <u>official</u> capacity liability.

More generally, in order to state a claim, a plaintiff must make "plausible" allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [liability] reflects the threshold

requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.*

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A Court considering whether a party has stated a plausible claim for relief is not required to accept as true legal conclusions disguised as factual assertions. *Id.*; *Harding v. Orlando Apartments, LLC*, No. 6:11–cv–85–Orl–19DAB, 2011 WL 1457164, at *2 (M.D. Fla. Apr. 15, 2011).

Plaintiff's proposed amendment is rife with legal conclusions regarding Boyd's behavior (e.g., "Officers acted in bad faith with malicious purpose;" Boyd "intentionally turned a blind eye to the exculpatory and exonerative evidence that existed or was available;" "Boyd . . . acted without available probable cause or reasonable suspicion"). Other than alleging that Boyd "let" his "leading detective" arrest Plaintiff, that Boyd helped "obtain an arrest warrant," and then, along with De La Osa, "deprived the plaintiff of his liberty" (i.e., arrested him), the remainder of the proposed amendment consists entirely of legal conclusions characterizing Boyd's motivation and knowledge. For instance, Plaintiff does not describe what sort of purportedly exculpatory evidence that Boyd ignored.

Put another way, the only significant factual allegations in Plaintiff's proposed amendment are that Boyd was De La Osa's supervisor and that, along with De La Osa, he obtained an arrest warrant and then arrested Plaintiff. While these factual allegations may

suggest the possibility of, and are consistent with, liability for false arrest and malicious prosecution, these factual allegations are also equally consistent with a theory that Boyd did nothing more than perform his perfectly legal role as De La Osa's supervisor. *See Harding*, 2011 WL 1457164 at *3 ("when a court considers the range of possible interpretations of the defendant's alleged conduct, if the 'more likely explanations' involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible") (quoting *Iqbal*, 129 S. C. at 1950-51)).

Given the procedural posture and legal standards applicable to this particular case, this conclusion is stronger than in the typical motion-to-dismiss-scenario in which *Twombly* and *Iqbal* are more routinely applied. It is important to remember that Plaintiff contends he was not able to file a timely motion for leave to amend because he did not discover the basis for his claims against Boyd until his former criminal defense counsel provided the documents to him after the supplemental deadline already expired. But a review of the two documents from his former counsel that Plaintiff specifically flagged suggests no wrongdoing by Boyd.

The first document is a single page from a multi-page Miami-Dade Police Report. In this report, Sgt. J. Padron describes that Boyd advised Padron that a homicide occurred and that Boyd assigned De La Osa as the lead investigator for that homicide. The remainder of the page relates what De La Osa told Padron when Padron arrived on the scene, but nothing De La Osa related implicates Boyd in any wrongdoing and Boyd is not mentioned again in any other context. The second document is a DNA testing consent form signed by Plaintiff. Boyd is listed as a witness to Plaintiff's signature. The form appears to be a standard consent form and, other than Boyd's signature, does not reference Boyd.

Plaintiff did not explain how these documents can, in any way, be said to have suddenly alerted Plaintiff to a basis to allege a claim against Boyd and an explanation is not obvious. These documents certainly do not support the legal conclusions characterizing Boyd's actions in the proposed amendment. A more-plausible explanation is that Plaintiff long ago determined that he also wanted to sue De La Osa's supervisor but Plaintiff did not know the supervisor's identity. In this scenario, though, Plaintiff could have easily discovered the supervisor's identity well before the supplemental pleading amendment deadline by means of a simple interrogatory asking for the information. Considered in either light (i.e., the documents do not contain any information implicating Boyd in any wrongdoing and Plaintiff has no information providing a basis to sue Boyd *or* Plaintiff simply did not know Boyd's identity and failed to exercise diligence in obtaining the information), Plaintiff's Motion for Relief From Order must be denied.

### IV. CONCLUSIONS

For the reasons above, Plaintiff's Motion for Relief From Order [ECF No. 151] is **DENIED**.

**DONE AND ORDERED**, in Chambers, in Miami, Florida, this 30th day of January, 2012.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Alan S. Gold
Stephen L. White, *pro se*
All counsel of record